IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES SAK and PEGGY LEIFER, | ) | NO. 11-4111 |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| THE CITY OF AURELIA, IOWA | ) | (EXPEDITED RELIEF REQUESTED) |
| Defendant. | ) | |

COMES NOW Plaintiffs, James Sak and Peggy Leifer, a married couple, by and through the undersigned, and pursuant to Federal Rule of Civil Procedure 65, Local Rules 65, 7.j and submit the following Brief in Support of Plaintiffs' Motion for Preliminary Injunction:

## **TABLE OF CONTENTS**

**PAGE**

FACTS ............................................................................................................... 2

STANDARDS FOR A PRELIMINARY INJUNCTION ....................................... 4

ARGUMENT AND AUTHORITIES ................................................................... 4

I.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM AGAINST DEFENDANT, THE CITY OF AURELIA BECAUSE DEFENDANT DISCRIMINATED AGAINST PLAINTIFF IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ............................................................ 4

#2122277

II.       DEFENDANT'S CONDUCT THREATENS IRREPARABLE HARM TO PLAINTIFFS ................................................................................................ 9

III.     THE BALANCE OF THE HARMS WEIGHS IN FAVOR OF PLAINTIFFS .......... 10

IV.     A PRELIMINARY INJUNCTION WOULD SERVE THE PUBLIC INTEREST .... 10

CONCLUSION ............................................................................................................ 11

**FACTUAL BACKGROUND**

Plaintiffs, James Sak and Peggy Leifer are a married couple who relocated from Chicago, Illinois to Aurelia, Iowa in November of 2011. Ms. Leifer was born and raised in Aurelia and returned to live close by and provide care for Ms. Leifer's ailing mother, age 87. Mr. Sak is a retired Chicago police officer and Vietnam Veteran (Army). Mr. Sak and Ms. Leifer dated for several years before becoming married in 2009.

In 2008, Mr. Sak suffered a hemorrhagic stroke which left him permanently disabled. Mr. Sak is unable to control the right side of his body and is confined to a wheelchair. As part of his physical therapy at the University of Illinois Medical Center, Mr. Sak and his family dog named Snickers learned how he could live independently after suffering this disability. Snickers became Mr. Sak's service dog and assists Mr. Sak. Mr. Sak's physical therapist described the assistance in that Snickers helps "with tasks which mitigate [Mr. Sak's] disability, including walking, balance, and retrieving items around the house." See Exhibit B, attached to the Complaint. Snickers is a certified service dog and appears on the National Service Animal Registry. See Exhibit A, attached to the Complaint.

Snickers is also a mixed breed dog, containing pit bull. Snickers was adopted by Mr. Saks at eight weeks old from a "backyard breeder" and has been a part of the family since that time. After the stroke, Snickers was transformed from a pet into a service dog. Snickers has no

history of aggression or unprovoked violence. In fact, there are no allegations that Snickers has acted in any way other than as a service dog.

Upon relocating to Aurelia, Iowa, Plaintiffs were summoned to a City Council meeting on November 21, 2011 wherein they were informed that Aurelia has a city ordinance prohibiting pit bulls. Plaintiffs explained to the City Council that Snickers is a service dog, to no avail. Plaintiffs obtained Snickers' registration as a service dog and written confirmation by Mr. Sak's physical therapist that Snickers is medically necessary given Mr. Sak's condition. These facts fell on deaf ears. Thirty-six residents signed a petition asking that there be no exceptions to the city ordinance—evidently, not even for service dogs, protected under the Americans with Disabilities Act. On December 14, 2011, a special City Council meeting was convened and the Plaintiffs were told that Snickers must be removed from city limits within 24 hours. The city ordinance provides that individuals not in compliance with the ordinance will face destruction of their animals.

Plaintiffs have been forced to incur the costs of boarding Snickers with a veterinarian outside of city limits since the City Counsel's decision. With the upcoming Christmas holiday, the veterinarian informed the Plaintiffs that holiday reservations have made it so there is no capacity to house Snickers past Friday, December 23, 2011. Plaintiffs are desperately seeking an alternative location to board Snickers or for a foster family in another municipality. However, Snickers should be returned to his home to provide the much needed assistance to Mr. Sak.

More importantly, however, since the City Counsel's unlawful decision, Mr. Sak has been denied access to his medically necessary service dog, and has suffered as a result thereof. Mr. Sak fell from his wheelchair, and without the assistance of his service dog to help him get back up, Ms. Leifer was forced to call 911, requiring an officer to emergently assist. Mr. Sak

and Ms. Leifer suffered and continue to suffer severe emotional anguish as a result thereof. Snickers provided a sense of safety, helping the Plaintiffs cope with Mr. Sak's disability. That safety was apparently deemed illegal by the City of Aurelia. Further, Ms. Leifer's ability to care for her ailing mother has been compromised since it is extremely precarious to leave her husband's side since Snickers was deemed *persona non grata* within city limits.

## STANDARDS FOR A PRELIMINARY INJUNCTION

The Eighth Circuit has set forth four factors which must be considered in determining whether to grant injunctive relief under Fed.R.Civ.P. 65(a), referred to often as the *Dataphase* factors. Those factors are: (1) Plaintiffs' probability of success on the merits; (2) the threat of irreparable harm to Plaintiffs; (3) the balance between the harm to Plaintiffs and the potential harm to Defendant if an injunction is granted; and (4) whether an injunction serves the public interest. *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). No single factor is dispositive, requiring that each factor be considered to determine the balance of the equities. *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld / Scott Fetzer, Co.*, 997 F.2d 484, 486 (8th Cir. 1993). The primary function of a preliminary injunction is to preserve the status quo until the final disposition of the case. *Id*. at 490. A district court has broad discretion in deciding whether a preliminary injunction should be issued. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).

## ARGUMENT AND AUTHORITIES

I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM AGAINST DEFENDANT, THE CITY OF AURELIA BECAUSE DEFENDANT DISCRIMINATED AGAINST PLAINTIFF IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT.

Plaintiffs need not show that they will ultimately succeed on its claims. *American Fin. Advisors, Inc. v. Yantis*, 358 F.Supp.2d 818, 826 (N.D. Iowa 2005). "Rather, the movant's success on the merits must be at least…sufficiently likely to support the kind of relief it requests." *Id*. (internal citations omitted). "Thus, a showing of likelihood of success on the merits requires simply that the moving party find support for its position in governing law." *Id*. Plaintiffs have met the burden on this element for its claims against Defendant.

Federal law states, "no qualified individual with a disability shall . . . be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. Mr. Sak is a qualified person as defined. *See* § 12131. Mr. Sak's service dog is squarely covered by the Americans with Disabilities Act ("ADA"). It is wholly contrary to federal law and constitutes discrimination to deny him the same. Service dogs are expressly recognized as part of the ADA. *See* 28 C.F.R. § 35-136. The ADA is silent as to any breed requirements for service dogs. However, the general rule is that "a public entity shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." *Id.* The Department of Justice ("DOJ"), who is tasked with implementation of the ADA, *see* 42 U.S.C. section 12134(a), in its interpretation of the aforementioned Regulation has made direct statements about breed specific legislation. *See* 28 C.F.R. § 35(App. A); 75 F.R. 56164, 56194, *Nondiscrimination on the Basis of Disability in State and Local Government Services* (Sept. 15, 2010). Courts seek guidance from such implementing regulations, "which are entitled to substantial deference." *Hahn ex rel. Barta v. Linn County, IA*, 130 F. Supp. 2d 1036, 1045 (N.D. Iowa 2001) ("to effectuate the statutory mandates of the ADA, the Department of Justice ("DOJ") promulgated regulations regarding the responsibilities of state and local governments to disabled persons. *See* 42 U.S.C. §

12134(a). As will be demonstrated below, therefore, the court will seek guidance from Title II's implementing regulations, which are entitled to substantial deference.") (citations omitted).

In a Final Rule, made effective March 15, 2011, the DOJ responded to the impasse created by breed specific legislation and the right under the ADA to have a service dog. Specifically, the DOJ stated:

> A few commenters suggested that certain breeds of dogs should not be allowed to be used as service animals. Some suggested that the Department should defer to local laws restricting the breeds of dogs that individuals who reside in a community may own. Other commenters opposed breed restrictions, stating that the breed of a dog does not determine its propensity for aggression and that aggressive and non-aggressive dogs exist in all breeds.
>
> ***The Department does not believe that it is either appropriate or consistent with the ADA to defer to local laws that prohibit certain breeds of dogs based on local concerns that these breeds may have a history of unprovoked aggression or attacks. Such deference would have the effect of limiting the rights of persons with disabilities under the ADA who use certain service animals based on where they live rather than on whether the use of a particular animal poses a direct threat to the health and safety of others. Breed restrictions differ significantly from jurisdiction to jurisdiction. Some jurisdictions have no breed restrictions. Others have restrictions that, while well-meaning, have the unintended effect of screening out the very breeds of dogs that have successfully served as service animals for decades without a history of the type of unprovoked aggression or attacks that would pose a direct threat, e.g., German Shepherds***. Other jurisdictions prohibit animals over a certain weight, thereby restricting breeds without invoking an express breed ban. In addition, deference to breed restrictions contained in local laws would have the unacceptable consequence of restricting travel by an individual with a disability who uses a breed that is acceptable and poses no safety hazards in the individual's home jurisdiction but is nonetheless banned by other jurisdictions. ***State and local government entities have the ability to determine, on a case-by-case basis, whether a particular service animal can be excluded based on that particular animal's actual behavior or history--not based on fears or generalizations about how an animal or breed might behave. This ability to exclude an animal whose behavior or history evidences a direct threat is sufficient to protect health and safety***.

*Id.* (emphasis added). Based on this express mandate from the DOJ, it is wholly clear that the City of Aurelia has no legal support for their continued discrimination against Mr. Sak and Snickers.

Aurelia, Iowa's city ordinance chapter 58 which stands in conflict with ADA does not prevail. *See* ADA, Title II, *Technical Assistance Manual*, II-1.4200 (2011) (stating, **"**Title II does not disturb other Federal laws or any State laws that provide protection for individuals with disabilities at a level greater or equal to that provided by the ADA. It does, however, prevail over any conflicting State laws."). *See e.g., Green v. Housing Authority of Clackamas County*, 994 F.Supp. 1253, 1257 (D. Or. 1998). In fact, it is quite elementary that the Supremacy Clause favors federal law when state law conflicts with an area of law covered by federal legislation. Furthermore, since there are agency regulations squarely on-point, these regulations are entitled to *Chevron* deference. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842, (1984).

The *Chevron* two-step analysis initially asks whether the statute directly speaks to the precise question at issue. *Id.*; *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1060-61 (5th Cir. 1997) (stating, "[w]e also defer to the Justice Department's commentary concerning service animals because it is not inconsistent with the plain language of the regulation."). If it is concluded that the statute does address the issue, then it is a matter of statutory construction; however, if the statute does not address the issue, then the analysis continues. "If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "The agency's construction does not have to be the only permissible reading of the statute." *Johnson*, 116 F.3d at 1061 (citing *Chevron*, 467 U.S. at 843 n. 11). "Such legislative regulations are given

controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844; *Gonzales v. Oregon*, 546 U.S. 243, 255 (2006) ("An administrative rule may receive substantial deference if it interprets the issuing agency's own ambiguous regulation. *Auer v. Robbins,* 519 U.S. 452 (1997). An interpretation of an ambiguous statute may also receive substantial deference."); *Olmstead v. L.C. by Zimring,* 527 U.S. 581, 598 (1999) ("the well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance").

It is evident that the ADA is silent as to the breed requirements, or lack of requirement, as applied to service dogs. Thus, if the agency, here the DOJ, has promulgated a permissible construction that is not arbitrary, capricious or manifestly contrary to the statute, then great deference is afforded. The DOJ's interpretation that localities cannot have breed specific restrictions for service dogs is founded within the spirit of the ADA which seeks to remove barriers affecting disabled persons. Here, the refusal to defer to local ordinances certainly cannot be characterized as arbitrary.

A public entity is required to make reasonable modifications to its ordinances pursuant to the ADA. *Hahn*, 130 F. Supp. 3d 1051.

> The regulations promulgated pursuant to the ADA require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

*Id.* (quoting 28 C.F.R. § 35.130(b)(7)). Here, Defendant is unable to show how allowance of a service dog would fundamentally alter the city's policy of excluding pit bulls. This is

particularly true in light of the fact that the Defendant permits pit bulls in the City if they were present prior to the enactment of the ordinance at issue.

Furthermore, the unreasonable restrictions placed upon pit bulls who are grandfathered in are similarly unenforceable if Snickers is to operate as a service dog. The restrictions are onerous and completely undermine Snickers' role. As such, the fact that Mr. Sak is entitled to a service dog and accommodation thereof, regardless of breed, necessarily means that the restrictions must not be enforced.

Thus, Plaintiffs are likely to succeed on the ultimate merits based upon the precise language in the Regulations and interpreting rules which are afforded great deference under federal law and the Defendant's clear failure to make reasonable modifications to its policy in order to protect Mr. Sak, as required.

## II. DEFENDANT'S CONDUCT THREATENS IRREPARABLE HARM TO PLAINTIFFS.

"Irreparable harm focuses on the harm or potential harm to the movant of the opposing party's conduct or threatened conduct." *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1047 (N.D. Iowa 2008). Mr. Saks requires his service dog Snickers in order to sustain a better quality of life on a daily basis. Mr. Sak has already fallen once since Snickers was forcibly ousted from the city of Aurelia. Mr. Sak is able to operate in society and experience a higher quality of life when his medical accommodation, his service dog Snickers is with him. Without Snickers, Mr. Sak experiences greater and heightened fears, insecurity, and increased chances of injury from his disability. The Defendant's action is akin to taking away Mr. Sak's wheelchair, to which he also requires. Mr. Sak's ability to move through life has been seriously compromised and the perpetuation thereof results in an irreparable injury.

III.     THE BALANCE OF THE HARMS WEIGHS IN FAVOR OF PLAINTIFFS.

When balancing the alleged harms at issue, it is clear that the Court does not entertain illusory harms, as compared to actual harm experienced. *Aventure Communications Tech., L.L.C. v. Iowa Utilities Bd.*, 734 F. Supp. 2d 636, 666 (N.D. Iowa 2010). It bears repeating that Snickers has absolutely no history of violence or aggression. The Defendant has not alleged that Snickers has acted in such a way. Rather, the Defendant points to illusory harms believed to be imminent based upon the misconception that a dog possessing character traits of a pit bull is somehow inherently dangerous. The Defendant cannot point to cognizable harm while Mr. Sak is without his medically necessary service dog. It is evident that the balance of the harms weighs in favor of Mr. Sak.

IV.     A PRELIMINARY INJUNCTION WOULD SERVE THE PUBLIC INTEREST.

"The 'public interest' factor frequently invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious. However, there are more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve, a preference for enjoining inequitable conduct, and the public's interest in minimizing unnecessary costs to be met from public coffers." *Aventure Communications Tech.*, 734 F. Supp. 2d at 667. The return of a medically necessary accommodation to a disabled person wholly comports with public policy. "Access to civic life by people with disabilities is a fundamental goal of the Americans with Disabilities Act." Furthermore, disabled individuals should not be denied the ability to move freely through the communities for fear of encountering a breed specific ordinance that makes the person's service dog contraband. As recognized by the DOJ, the disabled individual is to be able to utilize the

service dog and travel, like any other person. To find otherwise threatens to eviscerate the purpose and spirit sought to be achieved through the Americans with Disabilities Act.

## CONCLUSION

Mr. Sak is entitled under the ADA to maintain his service dog, notwithstanding the perceived fears of residents and local ordinances. Mr. Sak is entitled to protection under federal law and has shown he is likely to prevail on the merits herein. Mr. Sak has already suffered one fall without the aid of his service dog and irreparable harm is certain. Mr. Sak's potential harm greatly outweighs the perceived and unfounded fears associated with a pit bull breed. Snickers has not been accused to be aggressive or violent, rather he has been stereotyped and blindly deemed dangerous. The City of Aurelia was fully informed that Snickers is a service dog and still removed this medically necessary accommodation from Mr. Sak. Public policy dictates that Mr. Sak be permitted to maintain his service dog. To deny the same is wholly impermissible under federal law. Plaintiffs are entitled to the immediate return of the service dog Snickers by way of injunctive relief. Plaintiffs respectfully move the Court for an evidentiary hearing and that the Court enjoin the Defendant, as requested in the Motion for Preliminary Injunction filed contemporaneously herein.

/s/Sharon K. Malheiro
Sharon K. Malheiro, AT0004936
Michael C. Richards, AT0010828
Michele L. Warnock, AT0010068
The Davis Brown Tower
215 10th St. Suite 1300
Des Moines, Iowa 50309-3993
Telephone: (515) 288-2500
Facsimile: (515) 243-0654
E-mail: sharonmalheiro@davisbrownlaw.com
E-mail: mikerichards@davisbrownlaw.com
E-mail: michelewarnock@davisbrownlaw.com

ATTORNEYS FOR PLAINTIFFS

Of Counsel:

Davis, Brown, Koehn,
 Shors & Roberts, P.C.
The Davis Brown Tower
215 10th St. Suite 1300
Des Moines, Iowa 50309-3993

Copy to:

George W. Wittgraf
223 North Pine Street
P.O. Box 535
Cherokee, Iowa 51012

> **PROOF OF SERVICE**
>
> The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on December 22, 2011 by:
>
>     US Mail        FAX
>     Hand Delivered    Overnight Courier
>     Federal Express   X Other: CM/ECF
>
> Signature: /s/ Sharon K. Malheiro