UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| JAMES SAK AND PEGGY LEIFER,<br><br>　　　　　Plaintiffs,<br>vs.<br><br>THE CITY OF AURELIA, IOWA,<br><br>　　　　　Defendant. | CASE NO. 11-4111<br><br>**Defendant's Brief in Resistance to Plaintiff's Motion for Preliminary Injunctive Relief** |

**Table of Contents**

Facts …………………………………………………………………………………………pg.1

Standard of Review …………………………………………………………………………..pg.2

Law & Argument …………………………………………………………………………...pg. 3

　　I. Plaintiffs are not likely to succeed on the merits………………….................pg.3
　　A.  Peggy Leifer will not succeed on any of her causes of action………………....pg.3
　　1. Peggy Leifer has no standing to bring a claim under the ADA……………....….pg.3
　　2. No cause of action for spousal consortium exists**…………………....………**pg.4
　　II. James Sak is not entitled to preliminary injunctive relief……………...……….pg.4
　　A. James Sak would not prevail on his ADA claim……………….....………..pg.5
　　B. Irreparable Harm………………………………………………….……..…pg.10
　　C. Balance of the Harms Weigh in Favor of Defendant……………...…………pg. 10
　　D. The Public Interest……………...……………………………………….…pg.10

Conclusion ………...………………………………………………………….……pg. 11

**Facts**

For purposes of this Resistance, and only this Resistance, Plaintiffs and Defendant have agreed upon Stipulated Facts, which Plaintiffs will or have filed with this Court. Also, for purposes of this Motion for Preliminary Injunctive Relief, Defendant does not dispute the facts as averred by Plaintiffs in the "Facts" section of their brief with the exception of any legal conclusions asserted by Plaintiffs. Doc. No. 2-1, pgs. 2-4.

**KLASS LAW FIRM, L.L.P.**

1

## Standard of Review

"In determining whether to issue a preliminary injunction against a duly enacted statute, the district court must consider: (1) whether the movant is 'likely to prevail on the merits'; (2) the threat of irreparable harm to the movant; (3) the state of balance between this harm and the injury granting the injunction will inflict on other parties litigant; and (4) the public interest." *TCF Nat. Bank v. Bernanke,* 643 F.3d 1158, 1162 (8th Cir. 2011)(other citations omitted). "The party seeking injunctive relief bears the burden of proving these factors." *Lankford v. Sherman,* 451 F.3d 496, 503 (8th Cir. 2006)(other citations omitted). "The movant's burden is particularly heavy in those cases where granting the preliminary injunction will give that party substantially the relief it would obtain after a full trial on the merits." *Heather K. v. City of Mallard, Iowa,* 887 F.Supp. 1249, 1257 (N.D. Iowa 1995) citing *Sanborn Mfg. v. Campbell Hausfeld/Scott Fetzer, Co.,* 997 F.2d 484, 485-96 (8th Cir. 1993).

"No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." *Lankford* at 503. Likelihood of success on the merits can be the most significant factor under the circumstances. *S & M Constructors, Inc. v. Foley Co.,* 959 F.2d 97, 98 (8th Cir. 1992). Also, despite the "requirement that the court consider all of the factors, in this circuit, 'a party moving for a preliminary injunction is required to show the threat of irreparable harm,' *Baker Elec. Co-op.,* 28 F.3d at 1472, and the lack of irreparable harm is sufficient ground for denying or vacating a preliminary injunction. To put it another way, '[t]he threshold inquiry is whether the movant has shown the threat of irreparable injury.'" *Heather K.* at 1258. The Eighth Circuit Court of Appeals has held that a movant's failure to sustain its burden of proving irreparable harm ends the inquiry and the

denial of injunction relief is warranted. *Id.* citing *Modern Computer Systems, Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 738 (8th Cir. 1989).

### Law & Argument

**I. Plaintiffs are not likely to succeed on the merits.**
**A. Peggy Leifer will not succeed on any of her causes of action.**
**1. Peggy Leifer has no standing to bring a claim under the ADA.**

The threshold question in every federal case is whether the plaintiff has a "case or controversy between [herself] and the defendant." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed2d 343 (1975). "To determine whether a plaintiff has such a case, courts must analyze whether a plaintiff has standing to bring a claim." *Briggs v. Snohomish County,* 2009 WL 1360474, * 3 (W.D. Wash. 2009). The "irreducible constitutional minimum of standing has three requirements." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed. 2d 251 (1992). They are: injury-in-fact, causation, and redressability. *Id.* To meet the injury-in-fact requirement, "the party seeking review [must] be [herself] among the injured." *Id.*

It appears from the Complaint that Peggy Leifer is bringing all four causes of action listed in the Complaint in her name. Doc. No. 2-1. This might be an incorrect assumption, but Plaintiffs do not discern which cause of action applies to which plaintiff in their Complaint. *Id.* Nevertheless, because Peggy Leifer is not a disabled person as defined under the ADA she has no standing to bring the first three causes of action in her Complaint as they are brought under the ADA. *See, Briggs v. Snohomish County,* 2009 WL 1360474, * 3 (W.D. Wash. 2009)(District Court of Washington, Western District finding that no standing exists for brother of disabled person under the ADA seeking permission for use of a service animal at a local YMCA).

Peggy Leifer has no standing for the "Violation of 42 U.S.C. § 12133: Title II of the Americans with Disabilities Act;" "Declaratory Relief;" and "Injunctive Relief" causes of action thus she has no legal basis for obtaining an order for preliminary injunctive relief.

**2. No cause of action for spousal consortium exists.**

Peggy Leifer also has no chance of succeeding in her claim for loss of spousal consortium under the ADA. Loss of consortium claims under federal civil rights statutes have been rejected by district courts of the Eighth Circuit and districts outside the Eighth Circuit. *See, Franz v. Kernan,* 951 F.Supp.2d 159, 162 (E.D. Mo. 1996)(citing cases from the Eastern District of New York, South District of New York, and District of Maryland). The Eastern District of Missouri in *Dunham v. City of O'Fallon, Mo.,* 945 F.Supp. 1256, 1263 (E.D. Mo. 1996) quoted the *Franz* Court for the same holding that loss of consortium claims cannot be based upon federal civil rights legislation. The 8th Circuit Court of Appeals upheld the *Dunham* Court, stating, "We have carefully reviewed the record and we agree with the analysis of the district court as set forth in its well-reasoned memorandum and order. *See* 8th Cir. R. 47B. Accordingly, we affirm the judgments of the district court." *Dunham v. City of O'Fallon, Mo.,* 124 F.3d 207, 2007 WL 592992 (8th Cir. 1997).

Because no loss of spousal consortium cause of action exists under the ADA, the Court should deny Peggy Leifer's Motion for Preliminary Injunction.

**II. James Sak is not entitled to preliminary injunctive relief.**

The three causes of action asserted by Plaintiff James Sak are "Violation of 42 U.S.C. § 12133; Title II of the American with Disabilities Act," "Declaratory Relief," and "Injunctive Relief." James Sak seeks preliminary injunctive relief preventing Aurelia from

enforcing its anti-pit bull ordinances. Because James Sak would not prevail on his claims and would suffer no irreparable harm, this Court should deny this Motion.

**A. James Sak would not prevail on his ADA claim.**

42 U.S.C. § 12132 provides that "no qualified individual with a disability, shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." James Sak has not averred he has suffered any denial of benefits of services, programs or activities of Aurelia. The only claim he could possibly be asserting is that he was subjected to discrimination by Aurelia because of his disability. James Sak has not averred any allegation that Aurelia did anything discriminatory other than tell him he cannot have a pit-bull mixed breed dog as a service animal.

"Courts have construed this statute [42 U.S.C. § 12132] to authorize several different types of ADA claims: (i) those brought under an intentional discrimination (or "disparate treatment") theory; (ii) those brought under a disparate impact theory; and (iii) those brought under a "failure to accommodate' theory. *Fulton v. Goord, 591 F.3d 37, 43 (2nd Cir. 2009); Wisconsin Community Serv's., Inc. v City of Milwaukee, 465 F.3d 737, 753 (7th Cir. 2006); Crowder v Kitagawa, 81 F.3d 1480, 1483 (9th Cir. 1996).*" *Grider v. City and County of Denver,* 2011 WL 721279, * 3 (D. Co. 2011). James Sak does not delineate under which theory of discrimination of the ADA he is bringing his claim. It appears it would be under the "failure to accommodate" theory. All three potential ADA claims are addressed in this brief.

The disparate treatment claim "typically requires a showing that a municipality took a particular action based on a purposeful intent to discriminate against persons on the basis of

their disabilities." *Id.* quoting *Quad Enterprises Co. v. Town of Southold,* 369 Fed.Appx. 202, 207 (2nd Cir., 2010)(unpublished). James Sak does not allege Aurelia enacted its anti-pit bull ordinances with a purposeful intent to discriminate against persons based upon their disabilities. The Aurelia anti-pit bull ordinances are facially-neutral and are applicable to disabled and non-disabled people alike. Therefore, no disparate treatment claim exists in this matter.

The next type of ADA claim is a disparate impact claim. James Sak "faces a formidable pleading burden" in providing a disparate impact claim. *Id.* at * 4. In order to show that Aurelia's anti-pit bull ordinances have a "significantly adverse or disproportionate impact" on a protected group, James Sak is required to adduce statistical evidence "demonstrating the degree of disparity between the policy's impact on disabled persons and the policy's impact on non-disabled persons." *Id.* quoting *Tsombanidis v. West Haven Fire Dept.,* 352 F.3d 565, 575-76 (2nd Cir. 2003). It may be possible in some circumstances to show the degree of disparity of treatment through avenues other than statistics. James Sak must "nevertheless identify some 'analytical mechanism to determine disproportionate impact.'" *Id.* A simple anecdote showing that James Sak, himself, was affected by the ordinance "is not enough to satisfy this requirement." *Id.*

James Sak has pled no facts, statistics or provided any other type of evidence showing the extent or degree that Aurelia's anti-pit bull ordinances affect disabled persons relative to non-disabled persons. He has not, besides himself, identified any other person who is considered disabled under the ADA that is affected by the anti-pit bull ordinances. James Sak would not be successful in a disparate impact claim under the ADA.

The only claim James Sak could conceivably bring under the ADA is a failure to accommodate claim. While it is true that the ADA creates an obligation for public entities to reasonably accommodate disabled individuals, it is not always necessary. *Id.* A plaintiff asserting a failure to accommodate claim must allege and prove as follows (in addition to the fact that they are qualified individuals with disabilities):

> (i) that they are facially entitled to public benefits which are also available to similarly-situated persons without disabilities; (ii) that they require a reasonable accommodation in order for them to meaningfully access those benefits; and (iii) the public entity has refused to provide them with such a reasonable accommodation.

*Id.* quoting *Henrietta D. v. Bloomberg,* 331 F.3d 261, 280 (2nd Cir. 2003).

James Sak cannot be successful under this cause of action under the ADA like the other two. First, he has not identified one particular public service, program or activity that he is entitled to use from Aurelia, but has been unable to use as a result of Aurelia's anti-pit bull ordinances. There is not one allegation in his Complaint describing any service, program or activity he has been denied access to because of Aurelia's anti-pit bull ordinances. James Sak does not even aver a general, conclusory allegation that he was denied any public service, program or activity of Aurelia in his Complaint. Doc. No. 2-1. The District Court of Colorado, in facing very similar facts as this case, held that a Complaint that included general allegations of public services and programs being prevented from use, wasn't sufficient to survive a motion to dismiss under Rule 12(b). James Sak cannot meet the first element of a failure to provide a reasonable accommodations claim. This is important in that if James Sak has not been denied access to any program, service or activity, there cannot be any violation of the ADA.

Under the second element of this claim, James Sak must prove that he needs a reasonable accommodation to utilize the City's services, programs and activities. James Sak, however, has not identified any reasonable accommodation that is needed to access any Aurelia service, program or activity. If James Sak is utilizing any city service, program or benefit, his wife or any other person would be able to assist him if needed. He also can obtain a non-pit bull service dog.

In regards to the third element, James Sak asks that Aurelia include an exception to pit bull service dogs from its anti-pit bull ordinances. A public entity, however, only needs to make a reasonable accommodation in order to comply with the ADA. "To effectuate Title II's mandate, the regulations require public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). Although a public entity may be generally required to ensure access to its programs by animal-assisted persons, neither the ADA nor its regulations "create a right of universal access for all service animals." *See, Rose v. Springfield-Green County Health Dept.,* 668 F.Supp.2.d 1206, 1216 (W.D. Mo. 2009). If a "public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity," then changes may not need to be made. *Heather K. v. City of Mallard, Iowa,* 946 F.Supp. 1373, 1388 (N.D. Iowa 1996) quoting *Urban v. Jefferson County Sch. Dist. R-1,* 89 F.3d 720, 727 (10th Cir. 1996). "The Sixth Circuit Court of Appeals has commented that 'the word 'modification' 'connotes moderate change,' *MCI Telecommunications Corp. v. AT&T Co.,* 512 U.S. 218, ---. 114 S.Ct. 2223, 2230, 129 L.Ed.2d 182 (1994), and nothing in the context or structure of title II [of the ADA] suggests otherwise.' *Sandison,* 64 F.3d at 1037. Thus, as the regulations

specifically state, a modification that would 'fundamentally' alter or change a program or policy is not a 'reasonable modification.'" *Heather K.* at 1388.

James Sak does not allege or provide anywhere that he is unable to obtain meaningful access to any of Aurelia's programs, services or activities by utilizing another breed of service dog. Aurelia's anti-pit bull ordinance only prohibits ownership and possession of pit bulls. A reasonable alternative exists which would permit James Sak continued, meaningful access to Aurelia's programs, services and activities.[1]

A court's role is not to second-guess the decisions of a governing body. *See, White v. Farmers Ins. Exchange,* 1998 WL 34112764, * 8 (N.D. Iowa 1998). Iowa cities have broad police powers. *Home Builders Ass'n of Greater Des Moines v. City of West Des Moines,* 644 N.W.2d 339, 345-6 (Iowa 2002). Iowa Code § 364.1 provides that a City:

> may, except as expressly limited by the Constitution of the State of Iowa, and if not inconsistent with the laws of the general assembly, exercise any power and perform any function it deems appropriate to protect and preserve the rights, privileges, and property of the city or of its residents, and to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents. This grant of home rule powers does not include the power to enact private or civil law governing civil relationships, except as incident to an exercise of an independent city power.

The ADA and its regulations only require the Court to ensure that a public entity's decision is appropriate under the law and in light of proposed alternatives.

Because James Sak cannot articulate any program, service or activity he has been denied because of Aurelia's anti-pit bull ordinances, injunctive relieve must be denied.

---

[1] General pets are not considered service animals under the ADA as a service animal is to be individually trained. *See* 28 C.F.R.§ 36.104. It should be noted in the Stipulated Facts that Snickers was first obtained by James Sak approximately 5 ½ years ago. James Sak suffered his stroke in November 2008. He had Snickers for approximately two and a half years before his stroke.

**B. Irreparable Harm.**

James Sak claims in his brief that he would suffer irreparable harm if Snickers is not immediately returned and claims kenneling Snickers is "akin to taking away [his] wheelchair." Doc. No. 2-1, pg. 9. Although for purposes of this preliminary injunction motion, Aurelia concedes that James Sak will suffer harm of not having Snickers with him during this litigation, "irreparable harm will not be found where alternatives already available to the plaintiff make an injunction unnecessary." *Heather K.* at 1260. James Sake is able to obtain a new service dog of a breed other than a pit bull or pit bull mix.

**C. Balance of the Harms Weigh in Favor of Defendant.**

James Sak is correct in that it is clear that the Court does not entertain illusory harms as compared to actual harms. *Aventure Communications Tech., LLC v. Iowa Utilities Bd.,* 734 F.Supp.2d 636, 666 (N.D. Iowa 2010). Aurelia passed its anti-pit bull ordinance for the public safety after one of its city employee's was attacked by a pit bull. Permitting this preliminary injunction to stand would put the public's safety and health at risk when James Sak has other alternative means to rectify the situation, including obtaining a service dog that is not a pit bull or pit bull mix. The public's safety and health has to weigh in favor of Defendant.

**D. The Public Interest.**

James Sak is right that the "public interest factor invites the Court to indulge in broad observations about conduct that is generally recognizable as costly or injurious. However, there are more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve, a preference for enjoining inequitable conduct, and the public's interest in minimizing unnecessary costs to be met from public coffers."

*Aventure* at 667.  The ordinances were passed by duly elected city council people.  James Sak has not shown how he has been denied any access to civic life by the kenneling of Snickers while this matter is litigated.  Aurelia is not telling James Sak he cannot travel and utilize its services like any other citizen.  To the contrary, Aurelia is telling James Sak he can do so by obtaining a non-pit bull service dog in order to prevent other Aurelia citizens from utilizing the City's programs, services and activities.  Public safety is in the best interest of everyone involved.

### Conclusion

Because of the above-listed reasons, Aurelia respectfully asks this Court to deny James Sak's and Peggy Leifer's Motion for a Preliminary Injunction.

Respectfully submitted,

*/s/ Douglas L. Phillips*
Douglas L. Phillips
KLASS LAW FIRM, L.L.P.
Mayfair Center, Upper Level
4280 Sergeant Road, Suite 290
Sioux City, IA  51106
phillips@klasslaw.com
WWW.KLASSLAW.COM
712/252-1866
712/252-5822 fax
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I certify that, on December 27, 2011, I filed this pleading electronically with the clerk of the court using the CM/ECF system, which sent notification of such filing to:

George W Wittgraf     swmlaw@mchsi.com

Michael C Richards     mikerichards@davisbrownlaw.com, maryjwhite@davisbrownlaw.com

Michele L Warnock     michelewarnock@davisbrownlaw.com, karenmillard@davisbrownlaw.com

Sharon K Malheiro     sharonmalheiro@davisbrownlaw.com, karenmillard@davisbrownlaw.com

/s/ Douglas L. Phillips
Douglas L. Phillips